McLAURIN v. RION.

An administratrix filed her petition in the Court of Probate to sell the lands of her intestate in aid of assets, making the brothers of intestate, his heirs at law, defendants. They answered, denying title of this intestate and claiming title in their father, who was also deceased. Upon this issue the cause by consent was transferred to the docket of the Circuit Court, and judgment rendered for the plaintiff and the land ordered to be sold, which was accordingly done and to plaintiff's attorney. On appeal afterwards heard, this judgment was reversed and the claim of defendants sustained. Subsequently, this attorney conveyed to the plaintiff in that cause, and she to the plaintiff here, and afterwards the land was sold under executions against the executor of the father and purchased by defendant here, who took possession. In action to recover this land, *held:* Under its jurisdiction in matters of administration the Court of Probate could have sold only the interest of the intestate in this land, its decree operating in the nature of a proceeding *in rem* and not transferring the rights of the parties before it as heirs of another party; and the proceedings had in the Court of Common Pleas, upon the transfer of the cause, being a continuation of

those in the Probate Court—only in which aspect, under the allegations in this case, a Court of Equity would have had jurisdiction of the action—the sale under the order of the Circuit Court was in the nature of a probate sale, and passed the title only of the brother, which has proved to be no title at all.

Before WALLACE, J., Kershaw, February, 1885.

The opinion states the case.

*Messrs. Trantham & Winkler*, and *J. T. Hay*, for appellant.

*Messrs. J. D. Kennedy* and *W. H. R. Workman*, contra.

March 17, 1886. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was for the recovery of a plantation, "Buck Hill." Both parties claim under deeds from the sheriff of Kershaw County. Abram D. Jones and James G. Jones were father and son. The plaintiff claims the land as derived from James G., the son, and the defendant from Abram D., the father.

Plaintiff's claim. James G. Jones died intestate without wife or children. Mary E. Shaw, his administratrix, instituted proceedings in the probate court to sell "Buck Hill" in aid of the personalty to enable her to pay the debts of the estate. In that proceeding the heirs at law of the intestate (brothers and sisters) were of course made parties, and they, being also heirs at law of Abram D., the father then dead, claimed that the father's deed to "Buck Hill" was never delivered to the son, and that as heirs of the father they had title to the land. Upon this claim of title being made the case was transferred to the Court of Common Pleas by consent. The issue there was, whether the deed conveying Buck Hill had ever been delivered by the father to the son. Judge Carpenter (1876) decided that the deed had been delivered, and went on and ordered the land sold as the property of James G. An appeal was taken and he made a supplemental order that pending the appeal the sale might be stayed by giving bond, &c. It happened that this bond was not tendered within the time prescribed and on salesday in January, 1877, the sheriff offered the land for sale and it was bid off for $500, greatly below

its value, by W. L. DePass, the attorney of the plaintiff, Mrs. Shaw.   He took sheriff's title and subsequently executed to Mrs. Shaw a deed of three-fourths of the land, retaining the other fourth for his fee.   This deed, however, DePass left with his wife not to be delivered until after his death, and.it was delivered in the spring of 1882 to Mrs. Shaw.   She executed a deed June 9, 1882, to the plaintiff, McLaurin, and he brought this action for the land.

Defendant's claim.   Notwithstanding the aforesaid sale by the sheriff to DePass the appeal from Judge Carpenter's order of sale was prosecuted and the Supreme Court, March 1, 1878, reversed the decree and ordered an issue to try the question as to the delivery of the deed.   See *Shaw* v. *Cunningham*, 9 *S. C.*, 273.   Upon that issue it was decided that the deed never was delivered and James G. never had title, and Judge Mackey ordered restitution of the land sold as aforesaid pending the appeal.   On May 7, 1882, this judgment was affirmed by the Supreme Court.   See 16 *S. C.*, 631.   The land was afterwards sold under judgments against the executor of Abram D. Jones and purchased by the defendant, James H. Rion, attorney, who took sheriff's title for the same.

It was referred to the master to report his conclusions of law and fact, and he reported that the plaintiff is not entitled to the possession of Buck Hill plantation, not being the legal owner of the same or any part thereof.   The cause was heard by Judge Wallace who confirmed the report and dismissed the complaint. The plaintiff appeals upon the grounds: "I. Because his honor erred in overruling plaintiff's exceptions to the master's report and in sustaining said report upon the ground that only the interest of James G. Jones was sold by the sheriff under the decree of Judge Carpenter.   II. Because his honor erred in that he did not decide that the entire title to the land in dispute passed at said sale."

There has been much discussion in the courts as to what acts done under a judgment appealed from and afterwards reversed will be held good notwithstanding the reversal, and especially as to what persons such acts will not be sustained; but we do not think it necessary in this case to enter upon that subject.   A

controversy existed as to whether the plantation Buck Hill belonged to Abram D. Jones, the father, or to his son, James G., under deed from his father. This controversy was finally ended on May 7, 1882, when it was decided by the court of last resort that the deed was never delivered by the father to the son, and that the latter, James G., never owned the plantation. Both father and son were dead at that time, but the plantation was sold under judgment against the executor of Abram D., the true owner, and purchased by the defendant, James H. Rion, who took sheriff's title for the same, and is the legal owner thereof unless the title of the testator, Abram, had previously passed to the plaintiff or those under whom he holds.

It is claimed for the plaintiff that the title of Abram D. did pass by the force and effect of the sale of Buck Hill ordered by Judge Carpenter in the case of *Shaw* v. *Cunningham*, although that order was afterwards reversed and restitution of the land ordered—in the view that pending the appeal from the order of sale and before reversal that order, regular on its face and not stayed, was valid and effective to the extent of not only carrying the supposed title of James G., but also the real title of Abram D.; on the principle that as a rule a judgment is binding upon all the interests of all parties to the record, and the heirs of Abram D. were before the court in that case. Whether that principle is properly applicable to this case must depend to a large extent upon the true character of the order of sale made by Judge Carpenter. Under the constitution the probate court has jurisdiction "in all matters testamentary and of administration." Power has been conferred by statute upon that court to order the sale of real estate of a deceased person whose personal property is not sufficient to pay his debts. The case of *Shaw* v. *Cunningham* was originally filed in the probate court by Mrs. Shaw as the administratrix of James G. Jones to sell Buck Hill plantation as the property of her intestate, James G., for the purpose of paying his debts. That proceeding was purely a matter of administration, under the statute, in probate. *McNamee* v. *Waterbury*, 4 *S. C.*, 168. It suggested no difficulty about the title to Buck Hill, but it was necessary to make the heirs of her intestate parties, and it so happened that these persons were also

heirs of Abram D. Jones. They claimed that the land belonged to their father and never was the property of their brother, James G. Jones.

Now, if the judge of probate had then decided the matter, and ordered the land sold as the property of James G. to pay his debts, we suppose that, although the defendants were also the heirs of Abram D., the purchaser at that sale would have taken no more than the title that James G. had, which as it turned out was nothing. Upon what principle? Simply for the reason that it was a probate proceeding under the statute to sell a particular tract of land of a particular person to pay his debts, which is in the nature of a proceeding *in rem* where there is, in the ordinary sense, no adverse parties litigant, but the rights of these persons previously interested in the property are transferred from the property to the fund produced by the sale. The power of the court is over the property or thing before it without regard to the parties who may have an interest in it. All the world are parties and the estate passes by operation of law. In such case the order operates not on the person of the heirs, but on the title of the decedent, on which the debts, so to speak, operate as an implied lien. Under such an order the sale of land not the property of the decedent simply conveys nothing. *Rorer Jud. Sales*, §§ 222, 260; *Beauregard* v. *New Orleans*, 18 *How.*, 497; *Florentine* v. *Barton*, 2 *Wall.*, 216. In the last case cited, Judge Grier said: "The petition of the administrator, setting forth that the personal property of the deceased is insufficient to pay such debts, and praying the court for an order of sale, brought the case fully within the jurisdiction of the court. It became a case of judicial cognizance, and the proceedings are judicial. The court has power over the subject matter and the parties. It is true, in such proceedings there are no adversary parties, because the proceeding is in the nature of a proceeding *in rem*, in which the estate is represented by the administrator, and, as in a proceeding *in rem* in admiralty, all the world are parties."

But it is said that the sale was not ordered by the judge of probate; that when the question of title was raised in the probate court the proceedings of *Shaw* v. *Cunningham* were, by

consent, transferred to the Court of Common Pleas; that the whole character of the proceedings was then changed; and that Judge Carpenter's order of sale was made in the exercise of the general equity jurisdiction of that court. It would seem strange if the character of an order made for precisely the same purposes could be essentially changed simply because it was made in a different court. We think that cannot be the result here. The proceedings in the Court of Common Pleas must be considered as a continuation of those in the probate court. That was the view taken by Judge Carpenter in his original judgment (1876). He said that "the petition was originally brought in the probate court, but by consent transferred to the calendar of this court." In the first opinion of the Supreme Court (1878) Judge McIver carefully made the same statement, and it was repeated in the last opinion (1882).

The truth is, the proceedings in the Court of Comman Pleas could only be sustained on that ground, in connection with the issue as to title, which went of necessity to that court. As an original proceeding on the equity side of the Court of Common Pleas it was not, as we think, within the jurisdiction of that court. The paper filed in that court when the transfer was made was in the nature of a complaint by Mary E. Shaw, as administratrix of the estate of James G. Jones, stating that her intestate was largely indebted principally to herself as administratrix of her deceased husband; that the personal estate was insufficient to pay the debts, but that at the time of his death he was the owner of the Buck Hill plantation, which was in the possession of the defendants; and praying that they be required to deliver up the possession of the said plantation, and that it may be sold and the proceeds applied to the payment of his debts "in a due course of administration." This could not surely be considered a creditors' bill asking the court to take charge of an insolvent estate, to sell the lands, call in creditors, and marshal the assets. Some general reference was made to "other creditors," but none of them were named or made parties, and it was not expressly suggested that the estate was insolvent, "even were that sufficient." *Eno* v. *Calder,* 14 *Rich. Eq.,* 158. It seems to us that the petition was substantially a repetition of that in the

probate court; a petition in probate of the administratrix to have certain lands of her intestate sold to enable her to pay the debts "in due course of administration." If it was not that, it could be no more than an equitable action for the recovery of lands. Considered as an original proceeding on the equity side of the Court of Common Pleas, it was not properly within the jurisdiction of that court, and Judge Carpenter's order of sale was *ab initio* void. But if as heretofore we are to regard it as a continuance of or as auxiliary to those first instituted in the probate court, then we concur with the master and Circuit Judge, that the sale under the order of Judge Carpenter was in the nature of a probate sale and passed only the title of James G. Jones, deceased.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.